## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHELLE MORPHEW,           )
                                   )
            Plaintiff,      )
                                   )   **CIVIL ACTION**
v.                                   )
                                   )   **No. 12-1467-JWL**
CAROLYN W. COLVIN,[1]        )
Acting Commissioner of Social Security,    )
                                   )
            Defendant.    )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI, alleging disability beginning August 31, 2008. (R. 14, 141-55). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the decision denying benefits. In her Social Security Amended Brief (Doc. 16) (hereinafter Pl. Br.),[2] Plaintiff claims the Administrative Law Judge (ALJ) erred in assessing residual functional capacity (RFC) by failing to link the evidence with the RFC limitations, by erroneously weighing the opinions of her treating nurse-practitioner Ms. Kocher, by failing to fully consider the evidence regarding Plaintiff's need to use a cane, by failing to provide an adequate narrative discussion, by failing to provide a function-by-function assessment of Plaintiff's RFC before describing it in exertional terms, and by providing an inadequate credibility determination. She also claims that at step five of the sequential evaluation process the ALJ erred in relying on the vocational expert's testimony regarding work available to an individual such as Plaintiff.

---

[2]Plaintiff filed her amended brief seventy-seven days after she filed her original brief, seventy-one days after the deadline for filing Plaintiff's brief in accordance with Local Rule 83.7.1(d), and nineteen days after the court granted the Commissioner's second request for extension of time to file a responsive brief. Moreover, the amended brief was filed without explanation, without seeking extension of time, and without seeking leave of the court. Counsel is instructed that in the future she should seek leave of the court to file an amended brief after the deadline for filing, and inform the court when, as in this case, it would be a waste of the court's time to read the original brief because the arguments therein bear no relationship to the facts of the case.

Nevertheless, the Commissioner did not object to Plaintiff's late amendment, and when she filed her responsive brief, she responded only to Plaintiff's amended brief, filed fifteen days earlier. Because the Commissioner was not prejudiced by Plaintiff's tardy submission, the court accepts Plaintiff's amended brief pursuant to Local Rule 83.7.1.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**II.  Assessment of RFC**

In response to Plaintiff's allegations of error in the ALJ's RFC assessment, the Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegations of symptoms, and that substantial evidence in the record supports his determination. In making her credibility arguments, the Commissioner also argues that the ALJ assessed Plaintiff's alleged need for a cane and properly found no evidence in the record that use of a cane was medically necessary. She argues that the ALJ properly weighed the opinions of the various medical sources including nurse-practitioner Kocher, and supported his findings in that regard. The Commissioner agrees with Plaintiff that the ALJ did not perform a function-by-function assessment of Plaintiff's RFC, but argues this is not reversible error because the ALJ provided a detailed narrative discussion explaining the basis for his RFC assessment. Finally, she also argues that the ALJ properly relied upon the vocational expert testimony regarding other work in the economy available to an individual such as Plaintiff.

### A.    Standard for Assessing RFC

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2. It is an administrative assessment, based on all the evidence, of how plaintiff's impairments and related symptoms affect her ability to perform work related activities. Id.; see also Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2013) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related

activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2013) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").  The Commissioner provided eleven examples of the types of evidence to be considered in making an RFC assessment, including:  medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2013).

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-5p).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2013). The ruling includes narrative discussion requirements for the RFC assessment. Id. at 149. The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. The narrative discussion must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical source opinions regarding plaintiff's capabilities. Id. at 149-50. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at 150.

**B.**     **Discussion Regarding the Standard for Assessing RFC**

Much of Plaintiff's RFC argument rests upon the apparent assumption that an RFC assessment requires the ALJ to search the record (primarily medical records), find limitations in the record ascribed to the claimant which are related to each of the physical and mental functional areas (exertional, postural, environmental, concentration and persistence, adaptation, etc.), and to assess those limitations which are best supported by the record (apparently by according more weight to particular information based upon the

source of that information).  Plaintiff argues that the ALJ erred because he "appears to base his findings regarding the physical RFC in part on his own assumptions and interpretation of the medical records."  (Pl. Br. 10).[3]  Except that an RFC should be based in no part upon the ALJ's personal assumptions, it is precisely the ALJ's duty to assess RFC (both physical and mental) based upon his interpretation of the record evidence--medical and otherwise.  See, Howard, 379 F.3d at 949; McDonald, 492 F. App'x at 885; Dixon, 1999 WL 651389, at *2; 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946; SSR 96-8p.

Moreover, Plaintiff appears to assert that an ALJ must cite to record evidence for each and every functional limitation assessed, for twice in her brief, and once in her reply, she cites SSR 96-8p for the proposition that an "ALJ is required to link the evidence with the limitations in the RFC."  (Pl. Br. 10, 11; Reply 2).  Plaintiff is correct to the extent that SSR 96-8p requires "a narrative discussion describing how the evidence supports each [RFC] conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2013).  However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949;

---

[3]Because Plaintiff did not number the pages in her amended brief, the court uses the page numbers assigned by the software it uses to read the portable data file (.pdf) document retrieved from the court's CM/ECF system–Adobe Acrobat X Pro, version 10.1.2.

Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p does not necessitate citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).  "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.  See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or any other, for the Commissioner to base the limitations in his RFC assessment upon citation to specific statements in the evidence or opinions in the administrative record.

In this case, the ALJ did a remarkable job of describing how the evidence supports each RFC conclusion.  The ALJ's summary, discussion, and evaluation of the record evidence occupies approximately fifteen pages of the eighteen-page opinion.  (R. 16-29).  His specific RFC assessment appears at pages 20 through 29 of the record.  The ALJ discussed specific findings in detail throughout his decision, i.e., credibility (R. 21-22); Dr. Allen's opinion and Ms. Ahrens's opinion (R. 23-24); Ms. Kocher's opinion (R. 27); and the state agency consultants' opinions.  (R. 28).  Each of these discussions included reference and citation to record evidence, and explanation of the bases for the ALJ's specific findings.  Id.

Moreover, at certain points in the decision the ALJ took the time to integrate his findings and explain how he arrived at his RFC conclusions.  For example, after

explaining why he had accorded Dr. Allen's opinion "significant weight" and Ms.

Ahrens's opinion "little weight," the ALJ explained the bases for his findings regarding

mental limitations:

> As discussed above under the "paragraph B" criteria, there is some limited support for difficulty with concentration, persistence, or pace; however, Dr. Allen's opinion persuasively indicates that the claimant is capable of performing at least simple, unskilled work, with accordingly simple decision making, as described in the residual functional capacity. Therefore, the claimant is limited accordingly.

> The claimant also alleged that she is unable to deal with crowds as a result of her PTSD. While the claimant has credibly complained of nightmares and other symptoms due to her PTSD, there is little evidence of social anxiety or symptoms when in crowds, and the claimant testified that she was planning to go to a car show in [sic] Father's Day, indicating that she is able to deal with crowds, and she is willing to participate in recreational activities involving exposure to crowds. However, the undersigned notes that the claimant may have difficulty doing so on a regular and continuing basis. Nevertheless, the claimant admitted she is capable of dealing with supervisors, co-workers, and even the general public on a regular basis, so long as she does not have to deal with large numbers of them at once. This is consistent with her prior work at Lee's Cleaners, per her testimony. As a result, the undersigned finds the claimant is limited to occasional contact with supervisors, co-workers, and the general public. No other limitations are supported by the available medical evidence.

> The undersigned also notes that the claimant has a history of substance abuse, which she testified ended when she was a teenager. However, in March 2010, she was reported to smell strongly of marijuana during a doctor's appointment (Exhibit 1F, p.l [(R. 277)]). The claimant testified that this was due to sharing a car with a friend who used marijuana.[4] The claimant is also noted to hide her eyes repeatedly behind dark sunglasses, suggesting some attempt to conceal ongoing substance abuse, as no other

---

[4]The court notes that the record also contains a "Urine Drug Screen" report dated April 14, 2011 which was positive for marijuana. (R. 399).

reason for such behavior is suggested. Nevertheless, there is no credible evidence of additional limitations due to this possible substance abuse.

(R. 24-25). When one consider's this assessment in light of the ALJ's step two and three evaluation, his explanation of his credibility determination, and his evaluation of Dr. Allen's opinion and Ms. Ahrens's opinion, it is abundantly clear how he arrived at his mental RFC assessment and how the record evidence supports his evaluation. This is the required link between the RFC assessment and the record evidence.

In a similar discussion, the ALJ explained and integrated his physical RFC findings immediately after explaining the basis of his decision to accord Ms. Kocher's[5] opinion "very little weight:"

Regarding her physical abilities, there is no evidence the claimant cannot engage in lifting, sitting, standing, or walking consistent with light work.

Her range of motion and strength in the upper extremities is normal and functional, and her grip strength, at least on the right, is more than adequate. Furthermore, there is little indication of any numbness on the right and her diminished sensation on the left is not described as particularly significant. Furthermore, the claimant is able to carry out activities such as housecleaning, shopping, and caring for her daughter, which suggest some abilities to lift. In addition, the claimant indicates most of her physical problems predate the alleged onset date by a number of years, but she has been able to perform work at the light exertional level previously despite these problems. Additionally, the claimant's range of motion and strength in the lower extremities is normal, and, despite her hip problem and knee pain, there is very little evidence of any functional limitations.

_____

[5]The ALJ refers to this healthcare provider as Shelia Kroucher, and there is support for that in the records. (R. 364) (title page for "Chart Notes from Center for Health and Wellness by Shelia Kroucher, ARNP"). However, the record contains printed prescription forms which indicate that this healthcare provider is Sheila Kocher. (R. 365-66). In it's quotations from the decision, the court has corrected Ms. Kocher's name.

However, some degree of additional restrictions may be required, if the claimant's pain is credible. Despite the lack of any substantive evidence supporting her subjective complaints of pain, the undersigned notes that she has been diagnosed with fibromyalgia and a hip impairment, suggesting there is at least some substance to her complaints.

Therefore, as the claimant testified she can remain in one position for only brief periods of 15 to 30 minutes, the undersigned finds a need to alternate in her residual functional capacity. Additionally, postural limitations are possible, but the undersigned finds the claimant can perform these tasks at least occasionally, with the exception of climbing ladders, ropes, and scaffolds and crawling, based on her range of motion and activities of daily living. The claimant also testified that she has difficulty using foot controls, and her residual functional capacity was limited accordingly. Finally, the undersigned finds the claimant's ability to engage in overhead reaching, and fine and gross manipulation is limited, based on her right shoulder pain and left arm deformity.

(R. 27-28). In context of the ALJ's evaluation of the evidence; his weighing of the opinions of Ms. Kocher; his discussion of the treatment records of Dr. Morrow, Dr. Estivo, Dr. Eyster, and Dr. Sayeed; his evaluation of the credibility of Plaintiff's allegations; and his evaluation of the opinions of Plaintiff's mother, it is once again abundantly clear how he arrived at his physical RFC assessment and how the record evidence supports his evaluation. This is the required link between the RFC assessment and the record evidence.

Plaintiff's primary argument appears to be that after the ALJ accorded "very little weight" to Ms. Kocher's opinion, there remained no medical opinion stating physical functional limitations, and that it is error for the ALJ to interpret the record evidence independently and to provide his own assessment of physical limitations based thereon. Plaintiff misapprehends the law in this circuit. What the ALJ did in this case regarding

physical functional limitations is precisely what is required. As noted above, although an

ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ,

not a physician, is charged with determining a claimant's RFC from the medical record."

Howard, 379 F.3d at 949. "And the ALJ's RFC assessment is an administrative, rather

than a medical determination." McDonald, 492 F. App'x at 885 (citing SSR 96-5p).

Because RFC assessment is made based on "all of the evidence in the record, not only the

medical evidence, [it is] well within the province of the ALJ." Dixon, 1999 WL 651389,

at *2.

Plaintiff argues, "the ALJ provides no basis for his limitations in Morphew's

physical capabilities. In assessing the physical RFC, the ALJ fails to indicate any specific

evidence or opinion in support of the limitations found." (Pl. Br. 11). The ALJ's

explanation and integration of his physical RFC findings quoted above belies this

argument. While it is true that the explanation and integration does not contain citations

to specific evidence, when one looks at the underlying components of the analysis (the

ALJ's evaluation of the evidence; his weighing of Ms. Kocher's opinions, and discussion

of the treatment records of Dr. Morrow, Dr. Estivo, Dr. Eyster, and Dr. Sayeed; his

evaluation of credibility; and his evaluation of Plaintiff's mother's opinions), it is clear

the ALJ cited to record evidence and referred to the evidence upon which his discussion

and findings are based. More is not required.

To the extent Plaintiff may also be arguing that it is improper for the ALJ to rely

on the fact that the record contains "no evidence the claimant cannot engage in lifting,

sitting, standing, or walking consistent with light work" (R. 27), such an argument forgets that it is Plaintiff's burden to provide evidence of her functional limitations, and when she has failed to do so, or when the evidence provided is properly discounted, so long as the record has been developed properly, she cannot be found to have functional limitations for which there is no record evidence. Moreover, except for Ms. Kocher's opinion evidence, which the court addresses hereinafter, Plaintiff points to no record evidence requiring physical limitations greater than those found by the ALJ. Plaintiff has shown no failure to link the evidence with the RFC limitations assessed and no failure to provide an adequate narrative discussion in the ALJ's RFC assessment.

The court makes a final observation regarding Plaintiff's apparent application of the legal standard in this case. Plaintiff appears to have made her arguments based upon her view of the evidence, and ignores that the court's review is focused on the ALJ's decision. The starting place in review of a decision of the Commissioner of Social Security is the decision. As noted above, the question for the court's review is whether the decisionmaker applied the correct legal standard and whether substantial record evidence supports the decisionmaker's factual findings. Lax, 489 F.3d at 1084; accord, White, 287 F.3d at 905. If the answer to that two-part question is yes, it matters not that Plaintiff, or even the court, might construct a contrary conclusion which is also based upon the record evidence. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly

conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

**C.    Medical Source Opinions**

Plaintiff claims the ALJ erred in weighing Ms. Kocher's opinion. She argues that the ALJ stated he discounted Ms. Kocher's opinion because examinations revealed a normal gait, and the use of a cane was not recommended. (Pl. Br. 12). She argues that despite the ALJ's assertions, medical records note antalgic gait, weakness, and use of a cane, and that Ms. Kocher recommended use of a cane, and supported the limitations she assessed by pointing to decreased range of motion, gait, decreased balance, postural dysfunction, and use of a cane. Id. Further, she argues that Ms. Kocher's opinion is supported by Dr. Morrow's findings of decreased grip strength, decreased motor function, and decreased sensation; and by Dr. Eyster's notations that Plaintiff's snapping hip irritation was permanent, that she walked with a cane, and that she had a disability parking tag. Id. at 12-13. Finally, she argues that "there is no evidence of record that is inconsistent with Ms. Kocher's opinions of functioning and the opinions cannot be inconsistent with any other opinions as they are the only physical [RFC] opinions of record." (Pl. Br. 13). The Commissioner argues that the ALJ properly assigned "very little weight" to Ms. Kocher's opinion. (Comm'r Br. 13). She argues this is so because Ms. Kocher was not an "acceptable medical source" and although she had a substantial

treating relationship with Plaintiff, her opinions were not well-supported by the evidence. Id. at 13-14.

As Plaintiff's brief suggests, even though a nurse-practitioner such as Ms. Kocher is not an "acceptable medical source" within the meaning of the regulations, in those cases where a treating source opinion is not given controlling weight, opinions of nurse-practitioners will be evaluated using the regulatory factors for evaluating medical opinions from 20 C.F.R. §§ 404.1527 and 416.927. SSR 06-3p, West's Soc. Sec. Reporting Serv., Rulings 331-32 (Supp. 2013). In SSR 06-3p, the Commissioner recognizes that "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Id. at 332. The ruling explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also, Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

This is exactly the course the ALJ took in this case. He provided a rather extensive discussion and analysis of Ms. Kocher's opinions in his decision:

An opinion regarding the claimant's physical abilities was provided by [Sheila Kocher], ARNP, the nurse practitioner who treated the claimant at the Center for Health and Wellness. On July 20, 2011, Ms. [Kocher] indicated the claimant is qualified for a handicap parker placard, due to her inability [to] walk 100 feet without an assistive device (Exhibit 16F [(R. 422)]). However, the claimant's need for a cane is not supported by any objective medical evidence; as discussed above, while the claimant is reported to use a cane, there is no indication it was prescribed or required, and she had a normal gait during multiple examinations without use of a cane.

Then on July 28, 2011, Ms. [Kocher] opined that [Plaintiff] can lift less than ten pounds, stand and walk for less than two hours per day, and sit for only two hours per day (Exhibit 17F, p.2 [(R. 424)]). She also indicated the claimant must lie down one to two times per day, must shift position at will, and has various other postural limitations. She states these limitations are supported by the claimant's decreased range of motion, gait, decreased balance, postural dysfunction, and use of a cane (Exhibit 17F, p.4 [(R. 426)]). However, multiple examinations have shown no decreased range of motion and a normal gait; no indication of decreased balance [or] of a postural dysfunction are indicated in the record, and the claimant's use of a cane is not recommended by any medical providers. Overall, it appears Ms. [Kocher]'s opinions are without any basis in fact. Furthermore, Ms. [Kocher]'s treatment notes indicate observations and objective test results that are contradicted by similar notes from physicians. For example, Ms. [Kocher] reports that the claimant has a positive straight leg raise, but Dr. Estivo indicates the claimant has a negative straight leg raise (Exhibit 8F, p.2, 6 [(R. 321, 325)]).

Ms. [Kocher] also provided a similar opinion on October 20, 2010 (Exhibit 13F, p.3 [(R. 369)]). At that time, she indicated the claimant had limitations, but that they did not prevent work. This is contradicted by both earlier and subsequent opinions [by Ms. Kocher] indicating the claimant is unable to work (Exhibit 12F, p.2, 3 [(R. 365-66)]). Moreover, Ms. [Kocher]'s response to question 7B on the October 20, 2011 opinion suggests she is reporting the claimant's subjective complaints rather than her own opinion (Exhibit 13F, p.3 [(R. 369)]).

(R. 27). The ALJ's discussion with regard to Ms. Kocher's opinion is supported by the

record. For example, the ALJ noted that both Dr. Eyster and Dr. Morrow reported full

17

range of motion. (R. 25) (citing Ex. 2F/2 (R. 285) and Ex. 10F/2 (R. 348)). He noted that these reports were consistent with Dr. Sayeed's observations. (R. 26); see also (R. 377) (right hip slight pain with range of motion, right shoulder range of motion within normal limits); (R. 395) (cervical spine range of motion within normal limits). As the ALJ noted, the record contains no examination findings of decreased balance or of postural dysfunction. Dr. Morrow found that gait was normal and that Plaintiff did not use an assistive device. (R. 21) (citing Ex. 2F/2 (R. 285)). Dr. Allen also noted that Plaintiff did not use an assistive device. (R. 292). As the ALJ stated, Ms. Kocher completed a questionnaire on October 20, 2011 indicating that Plaintiff's condition limits gainful employment but does not prevent gainful employment. (R. 369). This is clearly inconsistent with Ms. Kocher's opinions in June and September, 2011 that Plaintiff was unable to work. (R. 365, 366). Moreover, the record also supports the ALJ's finding that Ms. Kocher's answer to question 7B on the October 20, 2011 opinion suggests she is reporting the claimant's subjective complaints rather than her own opinion. One of the interrogatories in question 7B of the cited exhibit asks, "Are there any types of work or training that would be more appropriate than others?" (R. 369). Ms. Kocher's response, "pt doesn't have any ideas," certainly suggests that the nurse-practitioner merely read the questions to Plaintiff and recorded Plaintiff's responses.

The court will address the ALJ's findings with regard to use of a cane momentarily, but it first addresses Plaintiff's argument that Ms. Kocher's opinion is supported by Dr. Morrow's findings of decreased grip strength, decreased motor function,

and decreased sensation, and by Dr. Eyster's notations that Plaintiff's snapping hip irritation was permanent, that she walked with a cane, and that she had a disability parking tag. None of these alleged supports for Ms. Kocher's opinion suggest that Plaintiff has functional limitations prohibiting all work, as Ms. Kocher suggests. For example, decreased grip strength might preclude very heavy work, heavy work, or even medium work, but a fair reading of Dr. Morrow's report does not indicate that all work is precluded by the decreased grip strength, motor function, or sensation he reports. In fact, he describes "slight diminished sensation in the ulnar distribution" (R. 287), nine pounds of grip strength in the left hand as opposed to 29.1 pounds on the right (R. 285), and motor function of 4 out of 5 strength in the left upper extremity. (R. 285). The same analysis can be applied to the allegedly supporting facts attributed to Dr. Eyster.

Plaintiff objects vehemently to the ALJ's finding that Plaintiff does not need a cane and that she was not prescribed a cane, and she implies that Ms. Kocher did as much when she certified for a disabled parking placard. (Pl. Br. 10) (citing R. 422). As quoted above, the ALJ acknowledged that Ms. Kocher certified Plaintiff for a disabled parking placard, stating that she could not walk 100 feet without an assistive device, but he also stated his finding that the need for a cane was not supported by objective medical evidence, and that although Plaintiff is reported to use a cane, there is no evidence in the record that it was required or prescribed. (R. 27). This finding was based upon the ALJ's earlier discussion regarding use of a cane, in which he said:

> The claimant also testified that she always uses a cane, because her right leg is non-weight bearing. However, Shawn R. Morrow, D.O, one of the consultative examiners, reported the claimant has no need for an assistive device and has a normal gait without one (Exhibit 2F, p.l, 2 [(R. 284-85)]). Dr. Allen also noted the claimant did not use an assistive device (Exhibit 3F, p.3 [(R. 292)]). Furthermore, while Sheila [Kocher], ARNP, and Dr. Sayeed repeatedly note that the claimant uses a cane, there is no indication she was prescribed a cane by any provider or that any provider indicates she needs a cane to walk. This contradicts the claimant's testimony that Ms. [Kocher] prescribed use of a cane.

(R. 21) (emphases in original). Plaintiff's arguments do nothing to unsettle the ALJ's rationale. She does not point to any evidence in the record where she was specifically prescribed a cane or any other assistive device. The record contains evidence as cited by the ALJ that Plaintiff did not use a cane, and the ALJ noted that although the record contains evidence that Plaintiff has used a cane, there is no evidence that she was ever prescribed a cane, and with the arguable exception of Ms. Kocher's disabled parking placard certification--which the ALJ properly accorded "very little weight"--there is no evidence any health care provider told Plaintiff she needs to use a cane.

Plaintiff has shown no error in the ALJ's evaluation of the opinion of Ms. Kocher, or in his consideration of the evidence regarding Plaintiff's use of a cane.

### D.    Function-by-Function Analysis

As noted above, Plaintiff complains that the ALJ did not provide his RFC in a function-by-function manner before describing it in exertional terms. The Commissioner agrees, but argues that this is not reversible error because the ALJ provided a detailed narrative discussion explaining the basis for his RFC assessment. The court does not

agree with either party's characterization, and finds that the ALJ properly identified

Plaintiff's functional limitations and restrictions and assessed Plaintiff's work-related

abilities before expressing his RFC in terms of the exertional level of "light work."

As noted above, the ALJ specifically discussed and summarized the record

evidence, considered the credibility of Plaintiff's allegations, and weighed the opinion

evidence. (R.16-29). Moreover, as quoted above at pages 10 through 12, he specifically

integrated his findings and explained how he arrived at both his mental and his physical

conclusions in a function-by-function assessment of Plaintiff's capabilities. (R. 24-25,

27-28). Nothing could be more clear in the decision at issue. Moreover, he summarized

his RFC assessment on a function-by-function basis in finding number five:

> 5.     After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform a range of
> "light work" as that term is otherwise defined in 20 CFR 404.1567(b) and
> 416.967(b). Specifically, she can lift 20 pounds occasionally and 10 pounds
> frequently. She can stand and/or walk about 6 hours out of an 8 hour
> workday, with normal breaks and can sit for about 6 hours out of an 8 hour
> workday, with normal breaks provided that the claimant may alternate
> between sitting and standing postures every 15 to 30 minutes. She can
> occasionally stoop, crouch, kneel, and climb ramps and stairs - but not
> ladders, ropes, or scaffolding. She can perform work requiring no crawling
> or operation of foot pedals. She can perform work requiring no more than
> occasional overhead reaching, and no more than frequent fine and gross
> manipulation. Otherwise, she can perform simple, unskilled work involving
> routine, repetitive tasks. She can perform occasional, simple, work-related
> decision-making, but no complex planning or negotiation. She can tolerate
> occasional contact with supervisors, coworkers, and the general public.

(R. 20) (bolding omitted). Each of these quotations illustrates the ALJ's identification of

Plaintiff's limitations on a function-by-function basis. Other than the alleged necessity

for a cane and the limitations assessed by Ms. Kocher, which were discussed above, Plaintiff points to no functional limitation which has been erroneously omitted from or erroneously included in the ALJ's consideration.

To the extent Plaintiff may be arguing that it was error for the ALJ to state in finding no. 5 that he found Plaintiff able to perform a range of light work before he stated the function-by-function limitations he assessed for Plaintiff, the court finds no error. If that is her argument, Plaintiff relies upon a hypertechnical reading of the ruling. To be sure, SSR 96-8p, as cited by Plaintiff states that an RFC may be expressed in terms of the exertional levels of work only after the limitations are expressed on a function-by-function basis. SSR 96-8p, West's Soc. Sec. Reporting Serv. 143 (Supp. 2013). However, the ruling clarifies that the function-by-function assessment is necessary before evaluating steps four and five of the sequential evaluation process in order to preclude the introduction of errors at those steps by applying exertional levels without considering each and every functional limitation. SSR 96-8p, West's Soc. Sec. Reporting Serv. 145-47 (Supp. 2013). Here Plaintiff has not shown that a function-by-function assessment was not made, and she does not argue that the ALJ failed to consider and apply any particular functional limitation.

### E. The Credibility Determination

Plaintiff claims the ALJ erred in his credibility determination because he relied on Plaintiff's reported daily activities without considering the limitations Plaintiff asserts she has in performing those activities, and because the ALJ failed to consider the record

evidence which supports her credibility. (Pl. Br. 14). The Commissioner argues that the ALJ properly considered the credibility of Plaintiff's allegations of symptoms, and points to record evidence supporting the ALJ's findings.

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

Affording the ALJ's credibility finding the deference it is due, the court finds no error. In two full pages of his decision the ALJ provided an extensive explanation of at least seven reasons to find that Plaintiff's allegations of disabling symptoms resulting from her impairments are not credible. (R. 21-22). He found that Plaintiff's comprehensive list of daily activities is inconsistent with her alleged need to lie down for

six hours a day and to take frequent breaks when performing any tasks; that she was vague in providing relevant information to medical care personnel regarding her impairments, particularly the location of her pain; that she has reported contradictory information to health care providers regarding her symptoms, such as numbness and her use of a cane; and that she failed to accurately report information regarding her past work activity performed during periods of alleged disability. (R. 21). The ALJ noted that plaintiff's impairments pre-date her alleged onset date by a significant length of time, that she has worked with the impairments, and that there is no objective or credible evidence that her condition has worsened over time; that Plaintiff has exaggerated several aspects of her medical record; and that the record evidence suggests drug-seeking behavior on Plaintiff's part. (R. 22).

In his credibility analysis, the ALJ provided specific examples of the bases for his rationale and provided citation to record evidence supporting that rationale. (R. 21-22). Plaintiff's argument (that the ALJ did not consider the limitations she asserts she has in performing her daily activities) ignores the ALJ's actual finding with regard to daily activities. First, the ALJ specifically acknowledged Plaintiff's asserted need to take frequent breaks when performing tasks and to lie down six hours a day. Moreover, the point of the ALJ's evaluation of Plaintiff's daily activities was not that the activities demonstrate an ability to perform work, but that the list of daily activities was so comprehensive as to be inconsistent with the alleged needs to take frequent breaks when performing tasks and to lie down six hours a day.

Plaintiff also argues the ALJ failed to consider record evidence which supports her credibility, such as ongoing treatment for her impairments, objective evidence documenting medically determinable impairments, and that her treating health care providers opined regarding greater limitations than did the ALJ. However, the ALJ specifically considered and discussed Plaintiff's medically determinable impairments (R. 17-18), and summarized her ongoing treatment. (R. 17-18, 21-28). Plaintiff points to no evidentiary facts regarding her impairments or her treatment which outweigh the ALJ's reasons for finding her allegations not credible or which preclude that finding. As to the opinions of her treating health care providers, Plaintiff does not argue specific error in the ALJ's determination that Ms. Ahrens's opinion is worthy of "little weight," and the court has already determined that there was no error in the ALJ's evaluation of Ms. Kocher's opinion. Plaintiff asserts error in one of the ALJ's seven reasons for his credibility finding, but ignored the other six reasons given. She has shown no error in that finding.

## III.    Step Five - Other Work

In her final allegation of error, Plaintiff claims that the ALJ's finding that the vocational expert testimony is consistent with the <u>Dictionary of Occupational Titles</u> (DOT) is erroneous because in fact certain of the jobs testified to by the vocational expert (VE) have different functional limitations than included in the hypothetical question presented to the expert. The Commissioner argues that at most the differences alleged by Plaintiff are insignificant variances, and that even if those jobs are eliminated the two

remaining jobs suggested by the vocational expert would together constitute a significant number of jobs in the economy which are available to an individual such as Plaintiff.

The court is reluctant to attempt to ascertain in the first instance that a particular number of jobs in the economy is a significant number of jobs within the meaning of the regulations. However, it need not do so because it finds that Plaintiff has failed to show error in the ALJ's reliance on the vocational expert testimony in this case.

As Plaintiff's brief suggests, in SSR 00-4p, the Commissioner placed two duties on an ALJ. First, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)." West's Soc. Sec. Rep. Serv., Rulings, 242 (Supp. 2013). Second, the ALJ must "[e]xplain in the determination or decision how any conflict that has been identified was resolved." Id. Thus, SSR 00-4p places the affirmative responsibility on the ALJ to "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT," and where VE "evidence appears to conflict with the DOT, . . . [to] obtain a reasonable explanation for the apparent conflict." Id. at 246.

In the hearing, at the end of his examination of the VE, the ALJ asked if there are any inconsistencies between the VE testimony and the DOT, and the VE responded that there are none. (R. 78). In his decision, the ALJ found that, "Pursuant to SSR 00-4p, the

undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. (R. 30).

Plaintiff's claim that there is a conflict requiring remand fails. As required by law and the Social Security Rulings, the ALJ asked if there were inconsistencies between the VE testimony and the DOT. (R. 78). The VE replied that there were none. Id. Thus, the ALJ fulfilled his first duty pursuant to SSR 00-4p. Plaintiff questioned the expert, but his questioning did not even attempt to suggest that there are conflicts between the VE testimony and the DOT. Plaintiff did not direct the ALJ to record evidence or to admissible authority that there is a conflict despite the VE testimony, and did not argue to the ALJ that the VE testimony was erroneous. Thus, the administrative record contains no evidence that the VE testimony and the DOT are inconsistent as alleged by plaintiff before this court, and it contains no hint that the ALJ's second duty pursuant to SSR 00-4p (to explain any apparent conflict) was triggered.

Plaintiff argues directly from the listings in the DOT, but without pinpoint citation to that authority, and without providing the court copies of the relevant portions of the DOT, that there are, in fact, conflicts between the VE testimony and the DOT. (Pl. Br. 15). The court recognizes that an ALJ must take notice of the DOT listings as authoritative information regarding jobs in the economy, and where the ALJ has not, the court in appropriate circumstances will do so.

Neither the ALJ, this court, plaintiff, nor plaintiff's counsel are experts in vocational matters with the expertise to interpret the DOT contrary to the interpretation

given by the VE. Plaintiff simply presents no basis in the record evidence, or legal or vocational authority to find otherwise than as testified by the VE. Plaintiff presents no authority whatsoever that any of DOT listings regarding the specific occupations and positions at issue here are otherwise than as testified by the VE. While one might argue, as Plaintiff has, that in order to perform these jobs the DOT requires greater capability than the ALJ found that Plaintiff possesses, it has also been noted that "a claimant's 'reliance on the <u>DOT</u> as a definitive authority on job requirements is misplaced' because '<u>DOT</u> definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range.'" <u>Page v. Astrue</u>, 484 F. 3d 1040, 1045 (8th Cir. 2007), quoting <u>Wheeler v. Apfel</u>, 224 F.3d 891, 897 (8th Cir. 2000). Moreover, the purpose of VE testimony is to go beyond matters established by taking administrative notice of the vocational documents recognized by the Commissioner. Recognizing the DOT listings as the <u>maximum</u> functional level required of any position within the occupations suggested by the VE, the court sees no specific conflict between the information presented in DOT and the VE's testimony. As a vocational expert, the VE was presumptively aware of the maximum requirements for each of the jobs about which he testified, and Plaintiff made no attempt at the hearing to attack his qualifications as an expert. The VE was also aware of Plaintiff's functional limitations as presented in the hypothetical question, and he testified that there are almost 365,000 positions in the national economy within those representative occupations which apparently have lesser

requirements than the maximum for each job and which Plaintiff has the capability to perform.

Even if the court were to find an apparent conflict, lacking vocational expertise, record evidence, or other admissible authority to establish that all of the jobs suggested by the VE require greater abilities than the RFC assessed, the court would still be compelled to accept the VE's undisputed testimony. Plaintiff's or her counsel's mere assertion as lay observers that the DOT listings require a different finding than that testified by the expert are insufficient to contravene the direct testimony of the expert. The court may not reweigh the evidence or make its decision based upon evidence outside the record. The only record evidence is the VE testimony that the DOT is consistent with the VE testimony. The ALJ followed the dictates of SSR 00-4p, and the record evidence reveals no conflict between the VE testimony and the DOT. The court finds no error in the ALJ's consequent decision to rely upon the VE testimony.

Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 8th day of April 2014, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**